UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81298-CIV-MARRA/MATTHEWMAN

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
AMTRUST BANK,

Plaintiff,

vs.

MARIO D. GERMAN LAW CENTER, P.A.,

Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Mario D. German Law Center, P.A.'s Motion to Sever Plaintiff's Claims (DE 28). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

On December 3, 2012, Plaintiff Federal Deposit Insurance Corporation ("FDIC") brought this three count complaint against Defendant Mario D. German Law Center, P.A. ("Defendant") for breach of contract (count one), breach of fiduciary duty (count two) and negligent misrepresentation (count three). The Complaint alleges the following:

AmTrust Bank ("AmTrust") was a federally chartered savings bank with its principal place of business in Cleveland, Ohio. (Compl. ¶ 1, DE 1.) On December 4, 2009, AmTrust was closed by the Office of Thrift Supervision and the FDIC was appointed Receiver. (Compl. ¶ 2.)

On or about February 10, 2009, AmTrust funded a purchase money loan in the sum of $220,000 to borrower Olivia Rudolfo ("Rudolfo") for the purchase of property located at 1914

Alamanda Way, Riviera Beach, Florida. (Compl. ¶ 7.) Rudolfo purchased the property from Sonoma Bay, Inc. for $275,000, financed in part by the Rudolfo loan. (Compl. ¶ 8.) AmTrust required Rudolfo to pay no less than $55,928 as a cash-to-close down payment. (Compl. ¶ 9.) Rudolfo defaulted on the loan without making a single payment. (Compl. ¶ 10.)

Defendant was the closing agent on this loan and agreed to abide by AmTrust's closing instructions. (Compl. ¶ 11.) Defendant certified that it closed the loan in compliance with all the conditions in those instructions. (Compl. ¶ 13.) Despite explicit instructions, Defendant closed the Rudolfo loan and disbursed funds in a matter inconsistent with the HUD-1 Settlement Statement. (Compl. ¶ 18.) Defendant disbursed $115,500 in proceeds obtained from AmTrust loan proceeds to TLC Marketing Directors, Inc. ("TLC"), even though the purchase contract for the transaction does not list any disbursements to TLC, TLC does not hold any lien against the property, and the disbursement is not standard in mortgage lending transactions. (Compl. ¶ 20.) Defendant did not contact AmTrust to inform it of the disbursement to TLC prior to closing the Transaction, and instead closed the transaction without authorization from AmTrust to make this disbursement. (Compl. ¶ 21.)

Upon information and belief, Defendant did not collect $55,928 from Rudolfo; instead, TLC paid Rudolfo's required cash-to-close down payment. (Compl. ¶ 22.) Defendant did not contact AmTrust to inform it that Rudolfo did not pay his down payment. (Compl. ¶ 23.) Thus, the true purchase price for the Rudolfo property was only $219,072 which caused AmTrust to fund a loan in excess of the true purchase price of the Rudolfo property. (Compl. ¶ 25.) Had AmTrust known the true facts, AmTrust would not have funded the loan. (Compl. ¶ 26.)

On or about April 7, 2009, AmTrust funded a purchase money mortgage loan in the sum

of $228,750 to Luis Jimenez for the purchase of property located at 1925 Alamanda Way, West Palm Beach, Florida 33404. (Compl. ¶ 27.) Jimenez purchased the property from Sonoma for $305,000, financed in part by the Jimenez loan. (Compl. ¶ 28.) AmTrust required Jimenez to pay no less than $81,436 as a cash-to-close down payment. (Compl. ¶ 29.) Jimenez defaulted on the loan without making a single payment. (Compl. ¶ 30.)

Defendant agreed to serve as closing agent in connection with this loan and agreed to abide by AmTrust's closing instructions. (Compl. ¶¶ 31; 33.) Defendant closed the loan and disbursed funds in a manner inconsistent with the HUD-1 Settlement Statement. (Compl. ¶ 38.) Defendant disbursed $144,265 in proceeds obtained from AmTrust's loan proceeds to TLC, despite the fact that, upon information and belief, the purchase contract for the transaction did not list any disbursements to TLC, TLC did not hold any lien against the property and this disbursement was not standard in mortgage lending transactions. (Compl. ¶ 40.) Defendant did not contact AmTrust to inform it of the disbursement to TLC prior to closing the transaction and instead closed the transaction without authorization from AmTrust to make the disbursement. (Compl. ¶ 41.)

Upon information and belief, Defendant did not collect $81,436 from Jimenez; instead, TLC paid the cash-to-close down payment. (Compl. ¶ 42.) Defendant did not contact AmTrust to inform it that Jimenez did not pay his down payment. (Compl. ¶ 43.) After accounting for Jimenez' failure to pay his down payment, the true purchase price for the property was only $223,564. (Compl. ¶ 44.) Defendant's action caused AmTrust to fund a loan in excess of the true purchase price of the property. (Compl. ¶ 45.) Had AmTrust known the true facts, AmTrust would not have funded the loan. (Compl. ¶ 46.)

On or about March 2, 2009, AmTrust funded a purcahse money mortgage loan in the sum of $108,000 to borrower Jose Silva for the purchase of property located at 1926 Hibiscus Lane, Riviera Beach, Florida, 33404. (Compl. ¶ 47.)  Silva purchased the property from Sonoma for $240,000, financed in part by the loan. (Compl. ¶ 48.)  AmTrust required Silva to pay no less than $66,430 as a cash-to-close down payment. (Compl. ¶ 49.)  Silva defaulted on the loan after making only one payment. (Compl. ¶ 50.)

Defendant agreed to serve as the closing agent in connection with the closing of the loan and agreed to abide by AmTrust's closing instructions. (Compl. ¶ 51.)  Despite the instructions, Defendant closed the loan and disbursed funds in a manner inconsistent with the HUD-1 Settlement Statement. (Compl. ¶ 58.)  Silva was to contribute $66,430 towards the purchase of the property. (Compl. ¶ 59.)  Defendant distributed $103,200 in proceeds obtained from AmTrust's loan proceeds to TLC despite the fact that, upon information and belief, the purchase contract for the transaction did not list any disbursements to TLC, TLC did not hold any lien against the property and this disbursement was not standard in mortgage lending agreements. (Compl. ¶ 60.)

Defendant did not contact AmTrust to inform it of the disbursement to TLC prior to closing the transaction and instead closed the transaction without authorization from AmTrust to make the disbursement.  (Compl. ¶ 61.)  Upon information and belief, Defendant did not collect $66,430; instead, TLC paid the required cash-to-close down payment. (Compl. ¶ 62.)  After accounting for Silva's failure to pay his down payment, the true purchase price was only $173,570. (Compl. ¶ 64.)  Defendant's actions caused AmTrust to fund a loan in excess of the true purchase price of the property and had AmTrust know the true facts, AmTrust would not

have funded the loan. (Compl. ¶ ¶ 65-66.)

Defendant moves to sever Plaintiff's claims, stating that these are three separate and distinct unrelated real estate transactions, with different agreements, documents, prices, transfers of money and damages. Defendant states that it is not enough that the claims share the same closing agent for mortgage loans issued by the same lender.  In response, Plaintiff notes that the Complaint alleges similar conduct by Defendant, violation of the same contract language and involvement of the same third party, TLC.

II. Discussion

Defendant moves for severance pursuant to Rule 21 of the Federal Rules of Civil Procedure.  The Rule states, in part, "[t]he court may [ ] sever any claim against a party." Fed. R. Civ. P. 21.  "Among the factors to be considered by the court in exercising its discretion under Rule 21 are whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the claim is severed."  Hartley v. Clark, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at * 4 (N.D. Fla. Feb. 12, 2010) (citing Disparte v. Corporate Executive Bd., 223 F.R.D. 7, 12 (D.D.C. 2004) (severance of plaintiffs' claims turns on considerations of whether claims arise from same transaction or occurrence, whether claims present some common question of law or fact, whether settlement of claims or judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims); In re High Fructose Corn Syrup Antitrust Litigation, 293 F. Supp. 2d 854, 862 (C.D.Ill.2003) (same); Wausau Business Ins. Co. v. Turner Const. Co., 204 F.R.D. 248, 250

(S.D.N.Y.2001) (same)). Rule 42 of the Federal Rule of Civil Procedure provides: "For convenience, to avoid prejudice, or to expedite or economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b).

At this stage in the proceedings, the Court concludes that the motion to sever should be denied. With respect to discovery and mediation, there is no basis to sever the case. Based on the allegations, the claims substantially involve the same pattern of conduct, the same legal issues and the same witnesses. Any differences highlighted by Defendant will not impact discovery or mediation enough to require severance. With respect to Defendant's concern that it will be limited in the scope and quantity of interrogatories (Mot. at 4), Defendant may move the Court for permission to craft discovery in an appropriate manner for this case.

Equally unpersuasive is Defendant's contention that "due to the overlapping allegations asserted in the Plaintiff's three causes of action, [Defendant] is prejudiced from identifying the documents, communications and witnesses specifically attributed to each transaction, and to prepare a proper defense to each claim." (Mot. at 5.) To the extent Defendant feels the Complaint did not provide him an adequate basis to respond to it, the proper course of action was to file a motion for a more definite statement. See Fed. R. Civ. P. 12(e); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("If a pleading 'fails to specify the allegations in a manner that provides sufficient notice' or does not contain enough information to allow a responsive pleading to be framed, the proper motion to be filed is a motion for a more definite statement.").

Finally, the Court will deny without prejudice the application to sever the trial. Once the

case has been better developed, the Court can determine whether convenience, avoidance of prejudice, or judicial economy requires severance of the trial.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Mario D. German Law Center, P.A.'s Motion to Sever Plaintiff's Claims (DE 28) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of September, 2013.

_____
KENNETH A. MARRA
United States District Judge